**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Ines Diaz Villafana (State Bar No. 354099)
Joshua B. Glatt (State Bar No. 354064)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
          dguerra@bursor.com
          idiaz@bursor.com
          jglatt@bursor.com
          jwilner@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS GATES and CHAKA THEUS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE A2 MILK COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Alexis Gates and Chaka Theus (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following on information and belief, by and through the investigation of undersigned counsel, except that Plaintiffs' allegations as to facts pertaining to themselves are based on personal knowledge:

## NATURE OF THE ACTION

1.      This is a class action lawsuit arising from Defendant The A2 Milk Company's ("A2" or "Defendant") manufacturing, distribution, and sale of its A2 Milk Products (the "Products")[1].

2.      Vitamin D is an instrumental nutrient in supporting human health.  Among other benefits, vitamin D supports bone health, muscle function, and immune health.  Additionally, because vitamin D helps the body absorb calcium, and milk is a calcium-rich food, many manufacturers fortify their milk products with vitamin D to increase nutritional benefits.

3.      Defendant is one such milk manufacturer.  Defendant claims to sell milk products that purport to offer consumers 2.5 micrograms ("mcg") of vitamin D per 240 mL serving (one cup, a "Serving").

4.      However, independent testing conducted by an ISO/IEC 17025:2017 accredited and FDA recognized laboratory found that, contrary to Defendant's 2.5 mcg of vitamin D per Serving representation (the "Vitamin D Representation"), the Products contain only 0.648 mcg of vitamin D per Serving; approximately *74% less* vitamin D than is represented on the Products' label.

5.      Accordingly, Plaintiffs bring claims on behalf of themselves and proposed classes for violations of (i) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;* (ii) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (iii) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (iv) Breach of Express Warranty; and (v) Unjust Enrichment.

---

[1] The Products include all size varieties of A2 Milk.  Discovery may demonstrate the need to adjust the scope of the Products.  Accordingly, Plaintiffs reserve the right to amend their complaint to include additional substantially similar Products should litigation prove necessary.

**PARTIES**

6.      Plaintiff Alexis Gates is a California citizen residing in Oakland, California. Plaintiff consistently purchased Defendant's A2 59 fluid ounce Whole Milk from various brick and mortar stores in Fremont and San Leandro, California including Safeway and Target.  Plaintiff Gates purchased the Product as recently as August 2025.  Plaintiff has continued to purchase the Products consistently for herself and her children.  When purchasing the Products, Plaintiff reviewed the nutrition label on the Products' packaging, including the Vitamin D Representation. Plaintiff reasonably understood Defendant's Vitamin D Representation to mean that the Products contained 2.5 mcg of vitamin D per Serving.  Plaintiff relied on this representation and warranty in deciding to purchase the Products.  These representations and warranties were part of the basis of the bargain in that she would not have purchased Defendant's Products or would have paid less for them had she known that the Vitamin D content in the Products was less than Defendant represented.  Accordingly, Plaintiff was injured and lost money as a result of Defendant's deceptive and unfair conduct.

7.      Plaintiff Gates remains interested in purchasing Defendant's Products in the future. However, unless and until she can determine if the Products are accurately labeled, she will be unable to rely on the truth of Defendant's labeling.  So long as the Products are labeled as containing 2.5 mcg of vitamin D per Serving—when they actually contain about 74% less vitamin D—Plaintiff will be unable to make informed decisions about whether to purchase the Products in the future and will be unable to evaluate the different prices between Defendant's Products and competitors' products.  Plaintiff will likewise be unable to rely on Defendant's marketing and representations going forward.  Moreover, she is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Products actually contain the amount of vitamin D per Serving that they purport to contain.

8.      Plaintiff Chaka Theus is a California citizen residing in Hawthorne, California. Plaintiff consistently purchased Defendant's 59 fluid ounce Whole Milk Product from various

brick-and-mortar stores in Torrance, California, including Walmart, Vons grocery store in Redondo

Beach, California, and Ralphs grocery stores in Los Angeles and Downey, California, starting in

2023.  Plaintiff has continued to purchase the Products consistently for herself and her children on

a weekly basis since.  When purchasing the Products, Plaintiff reviewed the nutrition label on the

Products' packaging, including the Vitamin D Representation.  Plaintiff reasonably understood

Defendant's Vitamin D Representation to mean that the Products contained 2.5 mcg of vitamin D

per Serving.  Plaintiff relied on this representation and warranty in deciding to purchase the

Products.  These representations and warranties were part of the basis of the bargain in that she

would not have purchased Defendant's Products or would have paid less for them had she known

that the Vitamin D content in the Products was less than Defendant represented.  Accordingly,

Plaintiff was injured and lost money as a result of Defendant's deceptive and unfair conduct.

9.      Plaintiff Theus remains interested in purchasing Defendant's Products in the future.

However, unless and until she can determine if the Products are accurately labeled, Plaintiff will be

unable to rely on the truth of Defendant's labeling.  So long as the Products are labeled as

containing 2.5 mcg of vitamin D per Serving—when they actually contain about 74% less vitamin

D—Plaintiff will be unable to make informed decisions about whether to purchase the Products in

the future and will be unable to evaluate the different prices between Defendant's Products and

competitors' products.  Plaintiff will likewise be unable to rely on Defendant's marketing and

representations going forward.  Moreover, she is likely to be repeatedly misled by Defendant's

conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-

misleading, and that its Products actually contain the amount of vitamin D per Serving that they

purport to contain.

10.     Defendant The A2 Milk Company is a Delaware corporation with its principal place

of business in Boulder, Colorado.  Defendant A2 Milk produces, markets, manufactures, and sells

its Products throughout California and the United States.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12.     This Court has specific personal jurisdiction over Defendant because Defendant sold the Products to consumers in California, including to Plaintiff Gates in this District.  Defendant derives substantial revenue from the sale of its Products in this District and purposefully avails itself to the benefits of conducting business in this District, with knowledge that its Products are being marketed and sold for use here.

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims took place in this District.  Specifically, Plaintiff Gates purchased A2 Whole Milk Products in this District.

## FACTUAL ALLEGATIONS

## I.      BACKGROUND ON VITAMIN D

14.     Vitamin D is a nutrient essential for human health.  Among other benefits, vitamin D helps the body absorb calcium, promotes bone mineralization and growth, reduces inflammation, and promotes immune function.[2]  Vitamin D is also essential to promoting muscle development and functions.  Studies have shown a link between vitamin D deficiency and muscle weakness, pain, and atrophy.[3]

15.     Given vitamin D's critical role in human health, and bone development and growth specifically, vitamin D intake is crucial at all stages of life.[4]

---

[2] NATIONAL INSTITUTE OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D fact sheet*, U.S. DEP'T. OF HEALTH AND HUM. SERVS. (July 24, 2024), *available at* https://ods.od.nih.gov/factsheets/VitaminD-HealthProfessional/.

[3] Christian M. Girgis & Tara C. Brennan-Speranza, *Vitamin D and Skeletal Muscle: Current Concepts From Preclinical Studies*, Amer. JBMR PLUS, Vol. 5, No. 12 (Oct. 24, 2021), 1-7, at 1, *available at* https://pubmed.ncbi.nlm.nih.gov/34950830/.

[4] PEDIMED CENTER, *Your Child and the Importance of Vitamin D*, *available at* https://www.pedimedcenter.com/blog/306690-your-child-and-the-importance-of-vitamin-

16.     Indeed, the National Institute of Health has developed recommended daily consumption amounts for Americans at all stages of life:[5]

| Life Stage | Recommended Amount |
| --- | --- |
| Birth to 12 months | 10 mcg (400 IU) |
| Children 1–13 years | 15 mcg (600 IU) |
| Teens 14–18 years | 15 mcg (600 IU) |
| Adults 19–70 years | 15 mcg (600 IU) |
| Adults 71 years and older | 20 mcg (800 IU) |
| Pregnant and breastfeeding teens and women | 15 mcg (600 IU) |

17.     Vitamin D can come from a few sources, including: sun exposure, food, and supplements.[6]  But, "[d]ue to the limited natural food sources of vitamin D, many products, including … dairy items[] and plant-based milks, are fortified with vitamin D2 and D3."[7]  These foods, commonly referred to as fortified foods, "provide most of the vitamin D in American diets."[8]  Accordingly, nearly all of the milk produced in the U.S. is fortified with at least 3 mcg of vitamin D per cup.[9]

18.     Americans heavily rely on fortified foods, including fortified milk, like the Products, in order to reach the recommended daily amount of vitamin D.[10]

---

d#:~:text=Vitamin%20D%20deficiency%20is%20incredibly,their%20vitamin%20D%20from%20 sunlight.

[5] NAT'L INST. OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D*, U.S. Dep't. of Health and Hum. Servs. (Nov. 8, 2022), *available at* https://ods.od.nih.gov/factsheets/VitaminD-Consumer/.

[6] *Id.*

[7] Maya Shetty, *Vitamin D: Benefits, Sources, Deficiency*, STANFORD UNIVERSITY LIFESTYLE MEDICINE (Mar. 11, 2024), *available at* https://longevity.stanford.edu/lifestyle/2024/03/11/vitamin-d-benefits-sources-deficiency/.

[8] NAT'L INST. OF HEALTH, OFF. OF DIETARY SUPPLEMENTS, *Vitamin D Fact Sheet for Health professionals*, *available at* https://ods.od.nih.gov/factsheets/VitaminD-HealthProfessional/.

[9] *Id.*

[10] *Id.*

---

1

**II.  DEFENDANT'S PRODUCTS MISTATE THE AMOUNT OF VITAMIN D**

2

19.    Defendant's Products prominently claim to include "Vitamin D" on the Product's

3

packaging. *See* Figure 1.

4

5

6

7

8

9

10

11

12

13

14

15



16

***Figure 1***

17

20.    On the nutrition panel, Defendant specifies that "Vitamin D" means the Products

18

contain 2.5 mcg of vitamin D per Serving.  *See* Figure 2.

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11



12

***Figure 2***

13    21.    However, in April 2025, independent testing commissioned by Plaintiffs' Counsel

14    to test the vitamin D content of a randomly selected 59 fluid ounce variety of Defendant's Products

15    found that the Product contained only 0.648 mcg of vitamin D per Serving; that is approximately

16    ***74% less*** vitamin D than Defendant advertises.

17    22.    The testing was conducted by an ISO/IEC 17025 accredited laboratory.[11]    The

18    testing was conducted using the AOAC 2012.11 method, developed for testing vitamins D2 and D3

19    in dairy products, among others.

20    **III.    DEFENDANT'S MILK PRODUCTS ARE SUBSTANTIALLY SIMILAR TO THE VERSION PLAINTIFFS PURCHASED AND THE LAB TESTED**

21

22    23.    The test results are representative of Defendant's other substantially similar milk

23    Products.

24

_____

25    [11] *See* INTERNATIONAL STANDARD OF ORGANIZATION, *available at*
    https://www.iso.org/standard/66912.html#:~:text=Why%20is%20ISO/IEC%2017025,technical%2

26    0proficiency%2C%20and%20scientific%20rigor ("ISO/IEC 17025 is the international standard for
    testing and calibration laboratories.  It sets out the requirements for competence, impartiality, and

27    consistent operation of laboratories, ensuring the accuracy and reliability of their testing and

28    calibration results.").

24.     Defendant sells three other varieties of milk Products, along with its whole milk. Each Product is sold with nearly identical labeling with minor differences highlighting fat content. *See* Figures 3-5.



*Figure 3*



*Figure 4*



*Figure 5*

25.     Significantly, each Product claims to contain vitamin D on the front label and claims to contain 2.5 mcg of vitamin D on the nutritional label, thus making the Vitamin D Representation on the packaging identical across all the Products.

26.     Save for meaningless differences in color, each variation of Defendant's Product is sold in nearly identical packaging, featuring prominent claims that the Product contains vitamin D. *See* Figures 1, 3-5.

27.     Additionally, each is produced, packaged, and sold by Defendant under similar supervisory and production conditions.  Defendant makes the same representation on its website for each of the Products: "100% real milk from cows that naturally produce only A2 protein…"[12]

28.     And since "milk doesn't naturally contain vitamin D," "almost all pasteurized cow's milk, as well as many brands of milk alternatives, have added vitamin D."[13]  This includes Defendant's Products.  Thus, Defendant is necessarily aware of—and controls—the amount of vitamin D added to the Products during production.  Accordingly, each version of Defendant's milk Products is labeled identically and subject to similar quality control scrutiny.

29.     Accordingly, each version of Defendant's Products prominently representing that it contains "Vitamin D" is substantially similar to that which Plaintiffs purchased.

## IV.     DEFENDANT'S PRODUCTS ARE MISBRANDED

30.     Defendant's Products are misbranded.  They fail to contain a vitamin D nutrient content equal to that stated on the label.

31.     The Food, Drug, and Cosmetic Act ("FDCA") defines two classes of nutrients: Class I and Class II nutrients.  *See* 21 C.F.R. § 101.9(g)(3).  Relevant here, Class I nutrients are "[a]dded nutrients in fortified or fabricated foods."  *Id.*  The vitamin D in the Products is considered a Class I nutrient because the Products are fortified with vitamin D.

32.     For a product containing Class I nutrients, "the nutrient content of the composite

---

[12] A2 Milk, *What is the a2 Milk difference?*  https://a2milk.com/products/a2-milk-whole.

[13] Anne Danahy, *What Is Vitamin D Milk Good For?* Healthline (Feb. 21, 2020), *available at* https://www.healthline.com/nutrition/vitamin-d-milk.

must be formulated to be at **least equal to** the value for that nutrient declared on the label." 21 C.F.R. § 101.9(g)(4)(i) (emphasis added). A product failing to meet this requirement is considered misbranded. 21 C.F.R. § 101.9(g)(4).

33. Thus, Defendant's Products are misbranded under the FDCA because they do not contain the amount of vitamin D Defendant represents on the label.

34. A product that is "misbranded" cannot legally be manufactured, advertised, distributed, or sold. 21 U.S.C. § 331(a).

35. California's Sherman Law expressly incorporates all drug labeling requirements set forth in the FDCA. *See* Cal. Health & Safety Code § 110100(a). The Sherman Law provides that any food is misbranded if it does not conform to FDCA requirements.

36. Each of Defendant's violations of federal law and regulations are also violations of California's Sherman Law, including, but not limited to, the following sections:

    (a)    Section 110100 (adopting all U.S. Food and Drug Administration ("FDA") regulations as state regulations);

    (b)    Section 110660 (false or misleading labeling);

    (c)    Section 110665 (not conforming to nutrition labeling requirements);

    (d)    Section 110690 (misleading container);

    (e)    Section 110760 (manufacture, sale, delivery, holding or offer of misbranded food);

    (f)    Section 110765 (misbranding food);

    (g)    Section 110770 (reception or delivery of misbranded food).

37. Thus, the underfill of vitamin D in the Products renders the Products misbranded and therefore illegal and unfit for sale in trade or commerce.

**V.    DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS INJURED PLAINTIFFS AND CLASS MEMBERS**

38. Defendant expressly and affirmatively represents on the Products' labels that they

---

contain 2.5 mcg of vitamin D per Serving.  However, because the Products do not contain the specified quantity of vitamin D, Defendant's representations are false and misleading.

39.    The amount of vitamin D in the Products is material to Plaintiffs and similarly situated consumers given the importance of consuming recommended amounts of vitamin D. Consumers further understand that milk is a good source of vitamin D.  If Plaintiffs and putative class members knew that the Products did not contain 2.5 mcg of vitamin D per Serving, Plaintiffs and Class members would not have purchased the Products, or they would have paid less for the Products than they did.

40.    Defendant's uniform marketing of its Products tracks with reasonable consumers' expectations of the vitamin D benefits of milk.  As Dairy Foods Magazine, a trade publication, has explained, "[f]inding new ways to bring to life the nutritional benefits of milk and milk products is key to appealing to health-conscious consumers.  Focusing on … vitamin D may give marketers a fresh way to keep nutrition conversations with consumers alive."[14]  Indeed, a 2007 consumer study found that "85 percent of respondents say that health and nutrition is 'very / somewhat important' when choosing food and beverages [and] [a]bout two-thirds of the respondents say they are 'very likely / somewhat likely' to buy products that communicate health benefits on the package[.]"[15] Additionally, "most people 'strongly / somewhat agree' that milk provides many nutrients beyond calcium."[16]  Not surprisingly then, "[c]onsumers believe milk to be the best beverage available for providing … vitamin D and consequently helping reduce the risk of osteoporosis,"[17] including

---

[14] Judith Jarvis, *Communicating Dairy's Nutrient Power to Consumers*, DAIRY FOODS (Jan. 22, 2009), *available at* https://www.dairyfoods.com/articles/84357-communicating-dairy-s-nutrient-power-to-consumers#:~:text=In%20addition%2C%20consumers%20believe%20milk,reduce%20the%20risk%20of%20osteoporosis.&text=The%20majority%20of%20consumers%20(74,desire%20for%20naturally%20healthy%20products.&text=Calling%20attention%20to%20the%20inherent,competitive%20superiority%20in%20the%20marketplace.

[15] *Id.*

[16] *Id.*

[17] *Id.*

Plaintiffs and similarly situated consumers seeking "Vitamin D"-branded milk products, like Defendant's.

41.     Consumers lack the ability to test or independently ascertain or verify whether the Products truly contain the levels of vitamin D Defendant claims.  Thus, consumers must rely on Defendant to truthfully and honestly report the vitamin D content of the Products on the Products' packaging.

42.     Yet, when consumers look at the Products' packaging, they are led to believe that they have significantly more vitamin D than they actually contain.

## FED. R . CIV. P. 9(b) ALLEGATIONS

43.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Though Defendant is best situated to know the composition of its Products, to the extent necessary, as detailed in the paragraphs above and below, Plaintiffs has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

44.     **WHO:** Defendant The A2 Milk Company.

45.     **WHAT:** Defendant's conduct was, and continues to be, deceptive because it deceived consumers into believing that the Products have 2.5 mcg of vitamin D per Serving even though testing of one of the Products—produced under similar circumstances to Defendant's other "Vitamin D"-branded milks—found it contained 0.648 mcg, or approximately 74% less vitamin D, than was stated on the packaging.  Even though Defendant was in control of, aware of, or should have been aware of, the amount of vitamin D it added to its Products, Defendant failed to accurately fill the Products with the correct amount of vitamin D as listed on the nutritional label and failed to accurately state the amount of vitamin D in the Products.  Defendant knew, or should have known, this information is material to reasonable consumers.  Yet, Defendant misrepresented on the labeling and advertising of its Products that they contain more vitamin D than they actually do.  Defendant failed to ensure the Products in fact contain the amount of vitamin D represented on

the packaging. Defendant knew or should have known that the Products contained less vitamin D than advertised because Defendant is the manufacturer of the Products and has quality control testing protocols set in place that should have identified the underfill of vitamin D in the Products.

46.     **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the applicable statutory period, including at the point of sale, by printing the false and misleading Vitamin D Representation directly on its Products' packaging.

47.     **WHERE:** Defendant's misrepresentations were made through its Products' label and were thus viewed by every purchaser, including Plaintiffs, at the point of sale in every transaction. The Products are sold nationwide in brick-and-mortar stores and online. Defendant's underfill of the vitamin D content occurred in Defendant's manufacturing facilities.

48.     **HOW IT IS FALSE:** Defendant misrepresented on the Products' label that they contain 2.5 mcg of vitamin D per Serving when they do not. And as discussed in detail throughout the Complaint, Plaintiffs and consumers (including members of the putative classes) read and relied on Defendant's misrepresentations before purchasing the Products.

49.     **WHY:** Defendant misrepresented and underfilled the amount of vitamin D in the Products. This representation was material in that it induced consumers like Plaintiff to purchase the Products for their purported nutritional benefit while charging consumers a price premium. Further, due to the representations and the Products being underfilled, Plaintiffs and members of the putative classes would not have purchased the Products or would have paid less for them had they known the truth about the vitamin D content. As such, Defendant unlawfully profited by selling the Products to thousands of consumers throughout the nation, including Plaintiffs and the members of the putative classes.

50.     **INJURY:** Plaintiffs and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Products, or would not have purchased them on the same terms, had they known the Products contain less vitamin D than Defendant expressly represents on the packaging.

**CLASS ACTION ALLEGATIONS**

51.     Plaintiffs seek to represent a class defined as:

>       All persons in the United States who purchased the Products for personal or household use during the applicable statute of limitations period (the "**Nationwide Class**").

52.     Plaintiffs also seek to represent a Subclass defined as:

>       All persons in the State of California who purchased the Products for personal or household use during the applicable statute of limitations period (the "**California Subclass**").

53.     Unless otherwise specified, the Nationwide Class and California Subclass shall collectively be referred to as the "Classes."

54.     Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge and/or Magistrate Judge to whom this action is assigned, and any member of such Judges' staff and immediate families, Defendant's Counsel, and Plaintiffs' Counsel.

55.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be modified, expanded, or narrowed by amendment to the Complaint or at class certification.

56.     **Numerosity.** The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate there are hundreds of thousands of members in the Classes.  Plaintiffs do not know the exact number of members in the proposed Classes, but reasonably believe, based on the scale of Defendant's business, that the Classes are so numerous that individual joinder would be impracticable.

57.     **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.   These common legal and factual questions include, but are not limited to, the following:

(a)    Whether the Products contained the stated amounts of vitamin D;

(b)    Whether Defendant knew or should have known the Products contained less vitamin D than advertised;

(c)    Whether Defendant was unjustly enriched;

(d)    Whether the underfill of vitamin D renders the Products misbranded and illegal to sell;

(e)    Whether Defendant violated the state consumer protection statutes alleged herein;

(f)    Whether Plaintiffs and the Classes have sustained monetary loss and the proper measure of that loss;

(g)    Whether a reasonable consumer would consider the amount of vitamin D in the Products to be material;

(h)    Whether Plaintiffs and the Classes are entitled to restitution and disgorgement from Defendant; and

(i)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive.

58.    **Typicality.**  The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all members of the Classes, purchased the Products, which were underfilled as to vitamin D.   The representative Plaintiffs, like all members of the Classes, have been damaged by Defendant's misconduct in the very same way as the members of the Classes.   Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

59.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Classes.   Plaintiffs have retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes.   Plaintiffs have no interests that are antagonistic to those of the Classes.

60.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.   The damages or other financial detriment suffered by

members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.   It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them.   Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.   Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.   By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
**Violation Of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

61.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

62.     Plaintiffs bring this claim individually and on behalf of the members of the California Subclass against Defendant.

63.     Defendant violated Civil Code § 1770(a)(5) of the CLRA in that Defendant's acts and practices constitute material representations that the Products have characteristics, uses, and/or benefits which they do not.

64.     Defendant violated Civil Code § 1770(a)(7) of the CLRA in that Defendant's acts and practices constitute material representations that the Products are of a particular quality, when they are not.

65.     Defendant violated Civil Code § 1770(a)(9) of the CLRA in that Defendant's acts and practices constitute the advertisement of goods in question without the intent to sell them as advertised.

66.     Defendant misrepresented the vitamin D content in the Products.  Specifically, Defendant stated that the Products contain 2.5 mcg of vitamin D per Serving, which corresponds to 15% DV of vitamin D per Serving.  However, testing of the Products revealed a Serving only contained 0.648 mcg of vitamin D.  Defendant knew this representation was material to reasonable consumers given the importance of vitamin D to human health and that milk is a common food consumers purchase to incorporate vitamin D into their diet.  Nevertheless, Defendant made the Vitamin D Representation despite underfilling the Products' vitamin D content.

67.     Plaintiffs and the California Subclass Members suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid had they known the truth about the Products' vitamin D content.

68.     Prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a CLRA notice letter, which complied in all respects with California Civil Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.

69.     Defendant failed to remedy the issues raised in the notice letter.  Accordingly, Plaintiffs seek damages from Defendant for their violations of the CLRA.

70.     Accordingly, Plaintiffs and members of the California Subclass seek (1) actual and punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II
### Violation Of California's Unfair Competition Law,
### California Business & Professions Code §§ 17200, *et seq.*
### (On Behalf of Plaintiffs and the California Subclass)

71.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

72.     Plaintiffs bring this claim individually and on behalf of the members of the

proposed California Subclass against Defendant.

73.    By committing the acts and practices alleged herein, Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* as to Plaintiffs and the Class, by engaging in unlawful, fraudulent, and unfair conduct.

74.    Defendant violated the UCL's proscription against engaging in **unlawful business practices** as a result of its violations of (1) CLRA, Cal. Civil Code §§ 1770(a)(5), (a)(7), and (a)(9); (2) California's Sherman Law; and (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

75.    Defendant's acts, omissions, and practices concerning the Products constitute "unlawful" business acts and practices in that they violate the CLRA, FDCA and, by extension, California's Sherman Law, and implementing regulations including, at least, the following sections:

    (a)    Section 110100 (adopting all FDA regulations as state regulations);

    (b)    Section 110660 (false or misleading labeling);

    (c)    Section 110665 (not conforming to nutrition labeling requirements);

    (d)    Section 110690 (misleading container);

    (e)    Section 110760 (manufacture, sale, delivery, holding or offer of misbranded food);

    (f)    Section 110765 (misbranding food);

    (g)    Section 110770 (reception or delivery of misbranded food).

76.    Defendant's acts and practices described above violate the UCL's proscription against engaging in **fraudulent business practices** by misrepresenting and overstating the true vitamin D content of the Products despite having superior knowledge of—and total control over—the amount of vitamin D added to the Products.  A testing of one of Defendant's milk Products showed the Products actually contained only 0.648 mcg of vitamin D per Serving—a 74% underfill.

77.    Defendant's acts and practices described above also violate the UCL's proscription against engaging in **unfair business practices.**  Defendant manufactured Products with an underfilled vitamin D content.  Defendant then sold these Products at full price despite the fact that the Products were underfilled.  Defendants' conduct is thus substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits.

78.    Plaintiffs and the California Subclass members suffered a substantial injury by virtue of buying the Products in that they would not have purchased the Products absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and misrepresentation about the vitamin D content of its Products, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

79.    Plaintiffs and the California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Plaintiffs and the California Subclass members are not able to test for the amount of vitamin D in the Products.  Thus, Plaintiffs and the California Subclass members could not have reasonably avoided the injury each of them suffered.

80.    Plaintiffs and the California Subclass lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased the Products on the same terms if they knew that the Products had less vitamin D than advertised; and (b) the Products did not have the characteristics, ingredients, uses, or benefits as promised by Defendant.

81.    Pursuant to California Business and Professional Code § 17203, Plaintiffs and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiffs and the California Subclass members; (b) disgorge all profits obtained as a result of its violations of the UCL; and (c) pay Plaintiffs' and the Subclass' attorneys' fees and costs.

82.    To the extent Plaintiffs do not have an adequate remedy at law, they pleads their

1    claim under the UCL in the alternative to their legal claims.  Legal remedies available to Plaintiffs

2    and Class Members are inadequate because they are not equally prompt and certain and in other

3    ways as efficient as equitable relief.  Damages are not as equally certain as restitution because the

4    standard that governs restitution is different than the standard that governs damages.  Hence, the

5    Court may award restitution even if it determines that Plaintiffs failed to sufficiently adduce

6    evidence to support an award of damages.  Damages and restitution are not the same amount.

7    Equitable relief, including restitution, entitles Plaintiffs to recover all profits from the wrongdoing,

8    which may exceed the available damages at law.

**<u>COUNT III</u>**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

9

10

11

12    83.    Plaintiffs hereby incorporate the foregoing allegations as if fully set forth herein.

13    84.    Plaintiffs bring this claim on behalf of themselves and the California Subclass

14    against Defendant.

15    85.    Defendant's acts and practices, as described herein, have deceived and/or are likely

16    to continue to deceive members of the California Subclass and the public.  As described throughout

17    this Complaint, Defendant misrepresents the true vitamin D composition of its milk Products.

18    86.    By Defendant's actions, they have disseminated uniform advertising regarding the

19    Products across California and the U.S.  The advertising was, by its very nature, unfair, deceptive,

20    untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such

21    advertisements were intended to, and likely did, deceive the consuming public.

22    87.    The above-described false, misleading, and deceptive advertising Defendant

23    disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented

24    that the Products contained 2.5 mcg of vitamin D per Serving when independent testing revealed

25    that a sampling of Defendant's line of milk Products contained significantly less.

26    88.    In making and disseminating these statements, Defendant knew, or should have

27    known, that its advertising was untrue and misleading in violation of California law.  Plaintiffs and

28    the members of the California Subclass based their purchasing decisions on Defendant's material

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                              20

false and misleading representations and warranties about the composition of its Products.

Plaintiffs and the California Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

89.     The misrepresentations by Defendant of the material facts described and detailed above herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

90.     Accordingly, Plaintiffs and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate equitable relief.

**<u>COUNT IV</u>**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Classes)**

91.     Plaintiffs hereby incorporate the foregoing paragraphs as if fully stated herein.

92.     Plaintiffs bring this claim individually and on behalf of the Classes against Defendant.

93.     Plaintiffs bring this claim under the laws of the State of California.

94.     Plaintiffs and the members of the Classes formed a contract with Defendant at the time they purchased the Products.

95.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging that the Products included 2.5 mcg of vitamin D.

96.     This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiffs, members of the Classes, and Defendant.

97.     As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warranty that its "Vitamin D"-branded milk Products contain 2.5 mcg of vitamin D per Serving.  However, Defendant breached its express warranties about the

1   Products by including significantly less vitamin D than stated on the packaging.  Simply, the

2   Products do not conform to Defendant's representations and warranties.

3         98.    Plaintiffs and the members of the Classes performed all conditions precedent to

4   Defendant's liability under this contract when they purchased the Products.

5         99.    Plaintiffs and the members of the Classes would not have purchased the Products

6   had they known the true nature of the Products.

7        100.    As a result of Defendant's breach of express warranty, Plaintiffs and members of the

8   Classes suffered financial damage and injury as a result and are entitled to damages, in addition to

9   costs, interest and fees, and attorneys' fees, as allowed by law.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

12       101.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding

13  paragraphs of this complaint.

14       102.    Plaintiffs bring this claim individually and on behalf of the members of the Classes

15  against Defendant.

16       103.    This claim is brought in the alternative to the extent permitted by Fed. R. Civ. P. 8.

17       104.    Plaintiffs and the Classes conferred a benefit on Defendant in the form of monies

18  paid to purchase Defendant's Products.

19       105.    Defendant voluntarily accepted and retained this benefit.

20       106.    Because this benefit was obtained unlawfully, namely by selling and accepting

21  compensation for the Products which had less vitamin D than Defendant advertised, it would be

22  unjust and inequitable for the Defendant to retain monies received from its misbranded Products.

23       107.    Plaintiffs and the members of the Classes do not have an adequate remedy at law

24  and plead their claim for unjust enrichment in the alternative to their legal claims.  Legal remedies

25  available to Plaintiffs and the members of the Classes are inadequate because they are not equally

26  prompt and certain and in other ways as efficient as equitable relief.  Damages are not as equally

27  certain as restitution because the standard that governs restitution is different than the standard that

governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs failed to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Equitable relief, including restitution, entitles Plaintiffs to recover all profits from the wrongdoing, which may exceed the available damages at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)  For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives for the Classes, and naming Plaintiffs' attorneys as Class Counsel;

(b)  For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)  For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)  For prejudgment interest on all amounts awarded;

(f)  For an order of restitution and all other forms of equitable monetary relief; and

(g)  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  September 12, 2025                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
    L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Ines Diaz Villafana (State Bar No. 354099)
Joshua B. Glatt (State Bar No. 354064)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
            dguerra@bursor.com
            idiaz@bursor.com
            jglatt@bursor.com
            jwilner@bursor.com

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Chaka Theus who resides in Hawthorne, California and Plaintiff Alexis Gates who resides in Oakland, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.  Additionally, Defendant transacts substantial business in this District, including sales of the Products at issue, and Defendant advertised and marketed the Products at issue to Plaintiff Gates in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 12th day of September, 2025.

_____*/s/ L. Timothy Fisher*_____
L. Timothy Fisher